LAURA J. BROWN (PA Bar # 208171)
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-3376
laura.j.s.brown@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIDAS GOLD IDAHO, INC., IDAHO GOLD RESOURCES COMPANY, LLC, and STIBNITE GOLD COMPANY,<br><br>       Plaintiffs,<br><br>       v.<br><br>THE UNITED STATES OF AMERICA; U.S. DEPARTMENT OF AGRICULTURE; THE UNITED STATES FOREST SERVICE; SONNY PERDUE in his official capacity as U.S. Secretary of Agriculture; and VICKI CHRISTIANSEN in her official capacity as the Chief of the United States Forest Service.<br><br>       Defendants. | **Civil No. 1:20-cv-00409-DCN**<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

The United States of America, the U.S. Department of Agriculture, the United States Forest Service, Mr. Sonny Perdue, in his official capacity as U.S. Secretary of Agriculture, and Ms. Vicki Christiansen, in her official capacity of the Chief of the United States Forest Service, (collectively "the United States" or "Defendants") submit this memorandum of law in support of their Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court should dismiss this action because Plaintiffs do not have constitutional standing. Plaintiffs' alleged injuries, dependent on uncertain events, are

speculative and do not constitute the type of injury in fact required by Article III. Additionally, even if the professed injuries were sufficient, they are not caused by the United States and are not likely to be redressed by this lawsuit.

## BACKGROUND

Plaintiffs, Midas Gold Idaho, Inc., Idaho Gold Resources Company, LLC, and Stibnite Gold Company (collectively "Plaintiffs" or "Midas") hold patented and unpatented mining claims in the Stibnite-Yellow Pine Mining District and are in the process of seeking approval of a plan of operations authorizing use and occupancy of National Forest System lands in connection with mining operations at the Stibnite Gold Project site ("Site"). ECF No. 1, Complaint ¶¶ 5, 46.

### A. The Nez Perce Tribe's Lawsuit Against Midas.

On August 8, 2019, the Nez Perce Tribe ("Tribe") filed suit against Plaintiffs and their parent company (Midas Gold Corp.), Civ. No. 1:19-cv-307 (D. Idaho), alleging that Plaintiffs discharged and continue to discharge pollutants from at least eight point sources at the Site into the East Fork South Fork Salmon River ("EFSF Salmon River") and its tributaries without a National Pollutant Discharge Elimination System ("NPDES") permit, in violation the Clean Water Act ("CWA"). ECF No. 1, Complaint ¶ 3. The Tribe seeks declaratory and injunctive relief prohibiting Plaintiffs from discharging pollutants into the EFSF Salmon River without a NPDES permit, as well as civil penalties pursuant to CWA Section 309(d), 33 U.S.C. § 1319(d), and an award of litigation costs. *Id.* ¶ 4. In its answer to the Tribe's complaint, Midas asserts that it cannot be liable under the CWA for discharges originating from lands on which it holds unpatented mining claims—lands that are "owned in fee by the United States" and are managed

by the United States Forest Service ("USFS"). ECF No. 1-6, Exhibit B to Plaintiffs' Complaint (Defendants' Answer to the Tribe's Complaint), at 28.

On August 18, 2020, Midas filed a motion seeking leave to file a third party complaint against the United States in the Tribe's lawsuit. *Nez Perce Tribe v. Midas Gold, et al.*, Civ. No. 1:19-cv-307 (D. Idaho), ECF No. 44. Shortly thereafter, the Tribe and Midas filed a stipulation for approval seeking that the court grant Midas' motion and allow Midas to file the third party complaint. *See id.* at ECF No. 46. Without issuing an opinion on the substance of Midas' motion, and pursuant to the parties' stipulation, the court granted Midas' motion to file a third party complaint against the United States, *see id.* at ECF No. 47, which Midas filed on September 9, 2020, *id.*, ECF No. 51.

On August 18, 2020, the same day Midas moved to join the United States as third party defendant in the Tribe's action, Midas filed its Complaint in this matter. ECF No. 1. Midas' two complaints against the United States are virtually identical.[1] In their motion for joinder in the Tribe's action, Plaintiffs alternatively moved to consolidate this matter with the Tribe's, which the court denied. *Nez Perce Tribe v. Midas Gold, et al.*, Civ. No. 1:19-cv-307 (D. Idaho), ECF No. 47.

**B. Midas' Complaint Against the United States.**

Midas brings its Complaint against the United States pursuant to the CWA's citizen suit provision, 33 U.S.C. § 1365(a). In its Complaint, Midas alleges that four of the eight point sources identified in the Tribe's complaint are either fully or partially on National Forest System lands—lands where one or more of the Plaintiffs hold unpatented mining claims. ECF No. 1 ¶ 5. Midas alleges that "[d]ischarges from these locations undermine Midas's efforts and vision to

---

[1] The United States has filed a motion to strike or, in the alternative, to dismiss the Third Party Complaint in the Tribe's action.

3

restore the Site and environment concurrent with all future mining phases under its Plan of Restoration and Operations ("PRO") which is now undergoing review USFS," and that "Midas may be forced to incur additional costs to remedy the waters impacted by the discharge of pollutants . . . to complete the planned restoration as envisioned in its PRO."  *Id.* ¶ 8.  Midas further alleges that if the Tribe's CWA violation claims are true, and the discharges are occurring from land allegedly owned and operated by the United States, then Midas may be subject to "potential clean-up costs and penalties associated with those discharges."  *Id.* ¶ 104.  Midas seeks declaratory and injunctive relief as well as an award of civil penalties.  *Id.* ¶¶ 119-20.

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether the complaint sets forth allegations sufficient to establish the court's jurisdiction over the subject matter of the claims for relief.  Because federal courts are courts of limited jurisdiction and may hear cases only to the extent expressly provided by statute, the first and fundamental question presented by every case is whether the court has jurisdiction to hear it.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("jurisdiction [must] be established as a threshold matter").  Where subject matter jurisdiction does not exist, "the court cannot proceed at all in any cause."  *Id.* (internal quotation marks omitted).  Plaintiffs bear the burden of establishing that the court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  The "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

## ARGUMENT

The Court should dismiss Midas' complaint because Midas lacks standing to pursue it. Article III of the Constitution limits federal court jurisdiction to resolving "cases" and "controversies." *Lujan*, 504 U.S. at 560. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To support constitutional standing, the plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560. Midas cannot satisfy that threshold requirement here.

### A. Midas' Alleged Harms Are Too Speculative to Constitute an Injury in Fact.

The speculative harms claimed by Midas as a result of the alleged discharges do not constitute an injury in fact because they are contingent upon events that have not yet occurred and may never occur. The Supreme Court has repeatedly emphasized that a "threatened injury must be certainly impending to constitute injury in fact," and that "[a]llegations of *possible* future injury" dependent on contingent events are not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis in original). Indeed, "if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009).

In the Complaint, Midas sets forth two possible future injuries that it alleges may harm its property interests: (1) the alleged discharges "undermine Midas's efforts and vision to restore the Site and environment concurrent with all future mining phases under its Plan of Restoration and Operations ('PRO') *which is now undergoing review by USFS . . .*" and Midas "*may* be forced to incur additional costs to remedy the waters impacted by the discharge of pollutants. . ."; and (2) if Midas is found liable for the alleged discharges, Midas could be subject to "*potential* clean-up costs and penalties" associated with the discharges. Complaint, ECF No. 1 ¶¶ 8, 96-97, 104 (emphasis added). In other words, Midas will be injured only (1) *if* the Forest Service approves its PRO and, thereafter, Midas is unable to affect its "vision" of restoring the Site as it mines the Site, without incurring costs to remediate the alleged discharges; or (2) *if* Midas is found liable for the alleged discharges and subsequently subject to penalties and cleanup costs. Because Midas' alleged harms are based on contingent future events, neither of which have occurred, and are dependent on decisions by independent actors (i.e., USFS, or a jury), Midas' alleged injuries are not "certainly impending." *Clapper*, 568 U.S. at 414 (declining to "endorse standing theories that rest on speculation about the decisions of independent actors."); *see also Los Angeles v. Lyons,* 461 U.S. at 105 (finding allegations of future injury to be inadequate because they were contingent on the plaintiff having an encounter with police where the police would administer an allegedly illegal chokehold). Unless and until these events occur, Midas has not suffered an injury that is concrete and particularized enough to constitute an injury-in-fact for standing purposes.

Moreover, while a contingent liability may, in some instances, present a sufficient injury to establish Article III standing, *see Clinton v. City of New York*, 524 U.S. 417, 429-31 (1998), it cannot here. To begin, in its Answer to the Tribe's complaint, Midas asserts that it cannot be

held liable for the discharges originating from land on which it holds unpatented mining claims, i.e., the discharges that form the basis of Midas' Complaint in this action. ECF No. 1-6, Exhibit B to Plaintiffs' Complaint (Defendants' Additional Statements and Defenses to the Tribe's Complaint) ¶ 2, at 28. If, as Midas contends, it cannot be held liable for these discharges, then Midas cannot assert standing on the basis of that contingent liability. *See City of San Diego v. Monsanto Co.*, 334 F. Supp. 3d 1072, 1084 (S.D. Cal. 2018) (holding that the contingent liability posed by pending lawsuit did not constitute an injury upon which defendant could support a counterclaim because defendant denied it could be responsible for the underlying violations).

Additionally, regardless of Midas' denial of liability for the relevant discharges, Midas has not alleged that it has been "immediately and directly" harmed by the contingent liability as necessary to constitute an injury-in-fact sufficient to confer Article III standing. *Clinton*, 524 U.S. at 430. In *Clinton*, the Supreme Court held that the City of New York had standing to challenge the constitutionality of the federal line item veto, even though a pending administrative action could have waived the City's contingent liability. The Court held that "[t]he revival of a substantial contingent liability" that resulted from the President's exercise of the line item veto conferred standing because it "immediately and directly affects the borrowing power, financial strength, and fiscal planning of the" City. 524 U.S. at 431. In other words, the City's contingent liability—the potential to lose billions of dollars— effectuated an immediate and direct harm.

Other circuit courts, including the Ninth Circuit, have recognized that, for a contingent liability to support an Article III injury in fact, the plaintiff must allege that the contingent liability itself has *concrete and present* consequence on that party. *Bryant v. Am. Seafoods Co.*, 348 F. App'x 256, 257-58 (9th Cir. 2009) (affirming dismissal where the plaintiff failed to adduce evidence establishing concrete, immediate harm caused by any contingent liability); *see*

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005) (holding that "the *present* impact of a future though uncertain harm may establish injury in fact for standing purposes") (emphasis added); *First Am. Title Ins. Co. v. Ortiz*, Civ. No. 11-00391, 2012 WL 13076302, at *10 (D.N.M. Aug. 29, 2012) ("In the absence of any evidence indicating that Plaintiffs' contingent liability has caused an actual or imminent harm," the alleged injury was "too remote and uncertain to afford Article III standing."); *Essilor Labs. of Am., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 08-C-296, 2009 WL 142323, at *4 (E.D. Wis. Jan. 20, 2009) (dismissing complaint for lack of standing where plaintiff "failed to allege how it is presently impacted based upon a contingent liability."). Because Midas' Complaint is devoid of any allegations that it is presently impaired by its potential liability, its alleged injury is "too remote and uncertain to afford Article III standing." *Ortiz*, 2012 WL 13076302, at *10.

### B. Even Assuming Plaintiffs Have Alleged a Sufficient Injury, the United States is Not the Cause of the Harm and a Favorable Decision Is Unlikely to Redress that Harm.

Even if the threat of cleanup costs and penalties constituted an injury-in-fact, the United States is not the cause of that harm – the Tribe's lawsuit is – and that injury is unlikely to be redressed by favorable decision in this matter. The causation component of standing requires a showing that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The redressability component of standing requires that it "must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). Midas has failed to demonstrate that the United States is the cause of its purported injury and that this action will redress that injury.

First, the Tribe's lawsuit has caused the threat of cleanup costs and penalties Midas claims as its injury. And that threat will continue to exist even if Midas were to succeed in obtaining injunctive relief against the United States in this lawsuit, because Midas may still be liable for the discharges the Tribe alleges are occurring from the point sources that are not at issue in this action. Moreover, a finding that the United States is liable for the discharges in this action would have no effect on Midas' civil penalty liability in the Tribe's action, because civil penalty liability under the CWA is not joint and several.[2] Rather, under the CWA, courts assess civil penalties against "any person" who violates the CWA, and the Act sets forth several factors that courts must take into account when determining penalties. 33 U.S.C. § 1319(d).[3] These factors require courts to look at the specific circumstances of individual defendants – e.g., the defendant's ability to pay, its history of violations, and the economic benefit it derived from the violations. *Id.* Thus, courts must tailor the penalty to the circumstances of each individual defendant.

Second, it is speculative to conclude that any injunctive relief ordered by this Court would reduce or otherwise affect the cleanup costs for which Midas may be found liable in the Tribe's lawsuit. As noted above, in the Tribe's action, Midas has denied liability for the discharges at issue in this case—the discharges Midas alleges are coming from the point sources located on National Forest System land. If Midas succeeds in asserting that defense in the Tribe's lawsuit, then the Court cannot require Midas to incur cleanup costs for such discharges,

---

[2] Even if the Court found the United States responsible for the violations and ordered injunctive relief, the United States cannot be held liable for civil penalties under the citizen suit provision of the CWA. *United States Department of Energy v. Ohio*, 503 U.S. 607, 617-18 (1992) (holding that the CWA's "omission" of the United States from the definition of persons "renders the civil-penalties sections inapplicable to the United States.").

[3] The citizen suit provision, 33 U.S.C. § 1365(a), authorizes district courts to apply "any appropriate civil penalties under section 1319(d)" of the CWA.

and Midas would have no claim against the United States. Moreover, notwithstanding Midas' alleged defense, to the extent Midas asserts its alleged harm will be redressed by an injunction from this Court requiring the United States to cease all unlawful discharges, such an assertion turns on speculation that this Court will issue such an order before there is a decision in the Tribe's case, which has already been proceeding for more than one year.

Because Midas has failed to demonstrate Article III standing to support its Complaint, this Court lacks subject matter jurisdiction over it and it must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court dismiss the Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully requested,

*/s/ Laura J. Brown*
LAURA J. BROWN (PA Bar # 208171)
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-3376
laura.j.s.brown@usdoj.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2020, the United States' Memorandum of Law in Support of its Motion to Dismiss was hereby served on counsel for Plaintiffs via the court's CM/ECF system.

*/s/Laura J. Brown*